**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE: ABILIFY (ARIPIPRAZOLE)
PRODUCTS LIABILITY LITIGATION,          Case No. 3:16-md-2734

                                        Judge M. Casey Rodgers
                                        Magistrate Judge Gary R. Jones

This Document Relates to:
*Nees*, 3:18-cv-876
_____/

## ORDER

The matter before the Court is a dispute between Plaintiff Myles

Jacob Nees and his former counsel, Levin, Papantonio, Thomas, Mitchell,

Rafferty & Proctor, P.A. ("Levin Papantonio"), concerning the entitlement to

attorney's fees and costs.[1]  Plaintiff retained Levin Papantonio to represent

him in this case pursuant to a contingency fee agreement.  ECF No. 13 at

24–30.  While represented by Levin Papantonio, Plaintiff settled his claim

against Defendants as part of this multidistrict litigation's settlement

program.  After agreeing to settlement but prior to the disbursement of any

funds, however, Plaintiff directed his counsel to withdraw from further

representation.  ECF Nos. 4, 7.  Levin Papantonio now asserts that it is

owed its attorney's fees and costs as part of the contingency.  The firm has

---

[1] The district court referred this matter to the undersigned for disposition in accordance
with 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a).  ECF No. 17.

filed a "Notice of Attorney's Lien," otherwise known as a charging lien, ECF No. 5, and moves to enforce the lien against the settlement funds, ECF No. 13. Plaintiff, on the other hand, moves to quash the lien, arguing: (1) he did not have a fee agreement with Levin Papantonio; and (2) even if an agreement existed, Levin Papantonio forfeited entitlement to payment when the firm voluntarily withdrew from representing him and because there was good cause for discharging his former counsel. ECF No. 8.

Upon careful consideration, the undersigned concludes that Levin Papantonio's motion to enforce the charging lien is due to be **GRANTED**. As discussed below, Plaintiff cannot avoid satisfying his end of the parties' contingency agreement—namely, the payment of fees and costs—after relying on his learned and experienced counsel to litigate this matter *through settlement*. What's more, the law does not allow Plaintiff to turn this dispute concerning the enforcement of a charging lien into a forum for a malpractice claim against his former counsel. Simply put, Plaintiff had the music and now must pay the piper.

## I. BACKGROUND

The relevant history of this dispute began on August 10, 2017, when Plaintiff contacted Levin Papantonio seeking representation in a potential case involving Abilify. ECF No. 13-1 ¶3 ("Declaration of Christopher G.

Paulos"). On August 15, 2017, following a prospective client interview, Levin Papantonio sent an initial packet to a telephone number and email address (mylesjacobnees@gmail.com) Plaintiff previously provided to the firm. *Id.*; *see also* ECF No. 13-2 ¶ 10 ("Declaration of Donald Kratt," Chief Information Officer for AssureSign).

The initial packet included the "Attorney-Client Employment Agreement in Mass Torts Cases" (the "Retainer Agreement") for Plaintiff to sign using AssureSign. ECF No. 13-1 ¶¶ 3–4. AssureSign is an internet-based service platform that allows documents to be signed electronically. ECF No. 13-2 ¶ 3. AssureSign documents and data are encrypted in storage and at rest, the participants' electronic signatures contain biometric and forensic elements, and the program's methods ensure that all transactions are confidential, secure, and can only be accessed by authorized users. *Id.* ¶¶ 3–5. Pertinent here, AssureSign maintains an audit trail reflecting each step completed during the life of a document, including the email addresses and IP addresses of the signatories and recipients, as well as the dates and times that each step in the process is executed. *Id.* ¶¶ 3–4.

The audit trail data for Plaintiff's Retainer Agreement with Levin Papantonio (ECF No. 13–2 ¶¶ 10–12) reflects that a link for the initial

3

packet, which included the Retainer Agreement, was sent to Plaintiff's email address on August 15, 2017, following an unsuccessful attempt to deliver the packet via SMS text message. That same day, the AssureSign link was opened on a device with an IP address assigned to a T-Mobile user. Plaintiff did not electronically sign the Retainer Agreement during that session. On August 16, 2017, the AssureSign link was opened on a Windows desktop or laptop device. During this session, the Retainer Agreement was reviewed and signed. Immediately thereafter, an email was sent to Levin Papantonio (msmith@levinlaw.com) and Plaintiff (mylesjacobnees@gmail.com) advising the parties that the document was signed. Levin Papantonio downloaded the completed document on August 16, 2017, and the document has not been altered or tampered with since it was completed in the AssureSign system.

The following day, on August 17, 2017, Levin Papantonio attorney and shareholder Christopher Paulos reviewed the completed Retainer Agreement and executed it on behalf of the firm. ECF No. 13-1 ¶5. The Retainer Agreement, which is an exhibit to Levin Papantonio's motion, ECF No. 13 at 24–30, states in relevant part that Plaintiff hired Levin Papantonio "to provide legal services" in his "claim for damages arising out of Abilify" and agreed to pay Levin Papantonio a variable contingency fee of: (1) 33

4

and 1/3 percent of any recovery up to $1 million if the recovery occurred before the defendants filed an answer to the complaint; or (2) 40 percent of any recovery up to $1 million if the recovery occurred after the defendants filed an answer.  ECF No. 13 at 24.  As to costs,[2] Plaintiff agreed to "pay all expenses incurred by [Levin Papantonio] in handling [his] case" and was cautioned that all costs advanced on his behalf would bear interest.  *Id.* at 24–25.  Lastly, the Retainer Agreement provided Plaintiff with the right to cancel the agreement by written notice within seven days after signing it.  *Id.* at 26.  Mr. Paulos sent a copy of the fully executed Retainer Agreement to Plaintiff on August 25, 2017, with a welcome letter.  *Id.* at 34–35; ECF No. 13-1 ¶ 7.

Levin Papantonio proceeded to perform a pre-suit investigation of Plaintiff's allegations, including "sending preservation letters, requesting potentially relevant records, collecting physical and documentary evidence in Mr. Nees' and third parties' possession, hiring and working with experts,

---

[2] The retainer agreement provides a non-exhaustive list of what expenses constitute reimbursable costs: "cash and non-cash expenditures for filing fees; subpoenas; depositions; witness fees; in-house and outside investigation services; expert witness fees; state court and multi-district litigation assessments; medical records and reports, computer research; photographs; in-house and outside photocopies; facsimiles; long-distance calls; postage and overnight delivery charges; common benefit charges; mediation fees; travel costs; in-house and outside media services; outside professional fees and costs for resolving medical liens, estate, guardianship, and bankruptcy matters; Medicare set-aside report preparation; and similar expenses incurred in performing legal services for [Mr. Nees]."  ECF No. 13 at 24–25.

and preparing the case for litigation."  ECF No. 13-1 ¶ 9.  Mr. Paulos states that "Mr. Nees cooperated with and was apprised of these efforts throughout the process."  *Id.*

On April 21, 2018, Levin Papantonio filed suit in this multidistrict litigation on behalf of Plaintiff.  ECF No. 1.  Levin Papantonio timely and properly served Defendants, ECF No. 13-1 ¶ 11, and, pursuant to the Court's Order on Procedures for Direct Filing and Master Pleadings, Defendants' Master Answer was deemed adopted in this case, Case No. 3:16-md-02734-MCR-GRJ, ECF No. 106 at 6.  Levin Papantonio litigated the liability and damages issues pertinent to Plaintiff's case while continuing to engage in discovery and additional efforts to collect evidence in support of Plaintiff's claims.  ECF No. 13-1 ¶ 12.

Plaintiff contacted Levin Papantonio on May 22, 2018, to inform counsel of the possibility that he would be incarcerated in Oregon.  *Id.* ¶ 13. This presented "heightened logistical challenges" in handling Plaintiff's case, but, with the assistance of counsel, Plaintiff timely complied with relevant case management orders and discovery obligations.  *Id.*

On February 21, 2019, the Court formally announced a global settlement of this multidistrict litigation and adopted a settlement program for the resolution of individual plaintiffs' claims.  Case No. 3:16-md-02734-

6

MCR-GRJ, ECF No. 1131.  Levin Papantonio says that during the course of the settlement program, Plaintiff was provided multiple letters discussing, in detail, the terms and conditions of settlement, the MDL assessment procedures, and his own rights and responsibilities with respect to participating in the settlement.  ECF No. 13-1 ¶ 15.  Plaintiff and Levin Papantonio also had multiple phone calls to discuss those letters, the settlement program, his various options in both continued litigation and settlement, and his decision to opt in or out.  *Id.* ¶ 16.

Plaintiff, through counsel, submitted a claims package to the Claims Administrators on June 4, 2019, through the Settlement Program portal and sought funds from the Extraordinary Damages Fund ("EDF").  *Id.* ¶ 17.  In August 2019, the Claims Administrators offered Plaintiff a Processed Loss award of 39.9420 points and denied his EDF claim.  *Id.* ¶ 18.  Plaintiff authorized Levin Papantonio to appeal both the Processed Loss Point Award and EDF denial on his behalf.  *Id.*  The appeal was successful, resulting in an additional 14.511 points under the Process Loss program, and an EDF award offer of $15,000 gross/$5,632.31 net, translating into $34,462.76 in additional funds for Plaintiff.  *Id.*  The total value of Plaintiff's final settlement award was $113,819.53.  *Id.*  On September 19, 2019, Plaintiff irrevocably accepted the final settlement award by signing and

7

returning the "Confidential Release, Indemnity, and Assignment" (the "Settlement Release") to Levin Papantonio, who submitted the Settlement Release to the Claims Administrators on September 25, 2019.  ECF No. 13 at 37-50; ECF No. 13-1 ¶ 19.

Levin Papantonio states that between October 23 and October 29, 2019, Plaintiff contacted Levin Papantonio by phone at least twice to inform the firm that he wished "to deal directly" with the Claims Administrators but had been informed they would not discuss his case with him as long as he was represented by counsel.  ECF No. 13-1 ¶ 20.  Plaintiff also addressed the fees and costs due to counsel under the Retainer Agreement and sought a "significant downward departure" from the agreed-upon contingency fee.  *Id.*  When Levin Papantonio declined to renegotiate the fees and costs, Plaintiff threatened to "file a bar complaint" unless the firm agreed to lower or waive the fees and costs.  *Id.*

Plaintiff contacted Levin Papantonio on November 1, 2019, by telephone.  *Id.* ¶ 21.  Mr. Paulos claims that Plaintiff terminated Levin Papantonio from further representation in this case and all other potential matters.  ECF No. 13-1 ¶¶ 21–23.  Plaintiff states in at least two filings that Mr. Paulos agreed to file a motion for leave to withdraw, although Plaintiff further asserts that there was "good cause" for terminating Levin

8

Papantonio.  ECF No. 8 at 2; ECF No. 11 at 1, 9.  On November 6, 2019, Levin Papantonio sent Plaintiff a letter summarizing the November 1, 2019, telephone call, explaining the remaining work to be done on Plaintiff's Abilify case, and enclosing relevant communications, records, and filings.  ECF No. 13 at 55–57; ECF No. 13-1 ¶ 26.  The next day, Levin Papantonio filed its motion for leave to withdraw, ECF No. 4, and a "Notice of Attorney's Lien," stating a claim "for fees and costs owed for legal services rendered and expenses paid in this matter," ECF No. 5.  Levin Papantonio mailed a copy of the filed charging lien to Plaintiff via certified mail on November 7, 2019.  ECF No. 13 at 69; ECF No. 13-1 ¶ 27.[3]

Levin Papantonio has filed a motion to enforce the charging lien, which also addresses Plaintiff's relevant filings.  ECF No. 13.  Relevant here, Plaintiff has filed an "*Ex Parte* Response to Notice of Attorney's Lien," ECF No. 8, a "Motion to Quash Attorney's Lien," ECF No. 11, and an "*Ex Parte* Reply to Levin Papantonio's Motion to Enforce Attorney's Lien and Request for Jury Trial," ECF No. 14.

---

[3] Plaintiff complains that he did not receive a signed copy of the charging lien, but he admits to receiving "an unsigned Notice of Attorney's Lien dated November 6, 2019[.]" ECF No. 8 at 3.

## II. DISCUSSION

### A.    The legal principles governing charging liens

"'Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held.'" *Gottlieb v. GC Fin. Corp.*, 97 F. Supp. 2d 1310, 1311 (S.D. Fla. 1999) (quoting *Webster v. Sweat*, 65 F.2d 109, 110 (5th Cir. 1933)).  In other words, "[t]he rights and obligations of parties to a contract, which provides attorneys' fees upon the happening of a contingency, are governed by state law."  *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 650, 652 (11th Cir. 1990).

For nearly 170 years, the Florida Supreme Court has recognized "an equitable right to have costs and fees due to an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983) (citing *Carter v. Davis*, 8 Fla. 183 (1858); *Carter v. Bennett*, 6 Fla. 214 (Fla. 1855); *Randall v. Archer*, 5 Fla. 438 (Fla. 1854)).  The state's highest court explained the basis for this right more than a century ago:

> While our courts hold the members of the bar to strict accountability and fidelity to their clients, they should afford them protection and every facility in securing them their remuneration for their services.  An attorney has a right to be remunerated out

10

of the results of his industry, and *his lien* on these fruits is founded in equity and justice.

*Bennett*, 6 Fla. at 258 (emphasis in original).

As a product of common law, "[n]o statutes outline the requirements for valid attorney's liens in Florida." *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986). Instead, the proceedings are equitable in nature, *Nichols v. Korelinger*, 46 So. 2d 722, 724 (Fla. 1950), and subject to a well-developed body of case law, *Sinclair, Louis*, 428 So. 2d at 1384–85. *See also Austin Laurato, P.A. v. United States*, 539 F. App'x 957, 961 (11th Cir. 2013) ("The requirements for imposing an attorney's charging lien are not codified in a Florida statute, but rather are governed by case law.").[4]

There are four requirements for an attorney to impose a valid charging lien: (1) an express or implied contract between the attorney and the client; (2) an express or implied understanding between the parties for the payment of fees or costs from the client's recovery; (3) either an attempt to avoid the payment of fees or costs or a dispute as to the amount involved; and (4) timely notice of the lien. *Daniel Mones, P.A.*, 486 So. 2d at 561; *Sinclair, Louis*, 428 So. 2d at 1385. The charging lien attaches only

---

[4] Because an attorney's charging lien sounds in equity, Plaintiff is not entitled to a jury trial on the validity of the lien. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352 (11th Cir. 2019).

to the "tangible fruits" of the attorney's services.  *Correa v. Christensen*, 780 So. 2d 220, 220 (Fla. 5th DCA 2001).

### B.   Levin Papantonio has a valid charging lien for attorney's fees and costs against Plaintiff's settlement funds

Plaintiff asks the Court to quash Levin Papantonio's charging lien because: (1) the firm does not have a valid contingency fee agreement with Plaintiff; (2) any contingency fee agreement with Plaintiff does not establish entitlement to fees and limits any claim for costs; (3) the firm agreed to withdraw from further representation; (4) there was good cause for discharging Levin Papantonio; and (5) the notice of attorney's lien was not signed, and therefore did not comply with Federal Rule of Civil Procedure 11.  ECF No. 11.  Each of these arguments fails because Levin Papantonio has satisfied all four requirements for a valid charging lien.

First—*the contract*. The fee agreement between an attorney and a client is subject to the general principles of state contract law.  *Lugassy v. Indep. Fire Ins. Co.*, 636 So. 2d 1332, 1335 (Fla. 1994).  The Retainer Agreement between Levin and Papantonio and Plaintiff, which appears to be signed by both parties (Plaintiff and counsel), is before the Court as an exhibit to the firm's instant motion.  ECF No. 13 at 24–30.  Plaintiff, nevertheless, says the Retainer Agreement is invalid.  ECF No. 11 at 2.

12

Liberally construing Plaintiff's *pro se* filings, the Court surmises that Plaintiff challenges the validity of the Retainer Agreement on two grounds. Plaintiff first "disputes the authenticity of his signature."  ECF No. 8 at 3. Notably, Plaintiff does not expound on this argument elsewhere in his filings other than by asserting Levin Papantonio uses a "Master Signature" for Plaintiff "to complete any form they wish."  *Id.* at 7.  Plaintiff's vague implications that his counsel or some unidentified person fraudulently signed the Retainer Agreement bear no weight.  Moreover, the audit trail and accompanying affidavit from AssureSign, ECF No. 13-2, provide exhaustive forensic evidence to extinguish any doubt that Plaintiff reviewed and executed the Retainer Agreement in August 2017 when it was delivered to him by email.

Plaintiff also avers that Mr. Paulos did not have the authority to bind the entire firm of Levin Papantonio to the Retainer Agreement.  ECF No. 8 at 3, 7.  This argument is nonesense.  Mr. Paulos states he had the authority as a partner to execute the Retainer Agreement on the firm's behalf, ECF No. 13 at 10, and "there [is] no requirement that each individual lawyer within the firm execute separate agreements with the client."  *Barwick v. Dillian, Lambert, P.A. v. Ewing*, 646 So. 2d 776, 779 (Fla. 3d DCA 1994); *see also Travelers Property Cas. Co. of Am. V.*

13

*Paramount Lake Eola, L.P.*, No. 6:08-cv-805-Orl-28GJK, 2010 WL 2977981, at *7 (M.D. Fla. June 21, 2010), *report and recommendation adopted*, 2010 WL 2977978, at *1 (M.D. Fla. July 26, 2010) (discussing *Barwick*).  Levin Papantonio, therefore, has demonstrated the existence of a contract to represent Plaintiff.

Second—*an agreement as to fees and costs.*  There is no question that the Retainer Agreement provides for a variable contingency fee payable to Levin Papantonio and for the reimbursement of costs should Plaintiff prevail in his Abilify claim.  ECF No. 13 at 24–25.  Plaintiff, however, claims that Levin Papantonio relinquished any entitlement to an award of fees and costs under the Retainer Agreement by voluntarily withdrawing from representation or, alternatively, because there was good cause for discharging Levin Papantonio.  *See, e.g.*, ECF No. 8 at 1–5; ECF No. 11 at 1–2.

Generally speaking, an attorney who voluntarily withdraws from a case *prior to the realization of the client's contingency* relinquishes any claim for fees.  *See Faro v. Romani*, 641 So. 2d 69, 71 (Fla. 1994) ("We hold that when an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation.");  *see also Aldar Tobacco Grp., LLC v. Am.*

14

*Cigarette Co., Inc.*, 577 F. App'x 903, 907 (11th Cir. 2014) ("[A]ttorney's voluntary withdrawal from representation before the occurrence of the contingency forfeits any and all claim to compensation."). And as Plaintiff points out in his memorandum, ECF No. 12, there is an expansive body of case law in Florida addressing an attorney's entitlement to a contingency fee where the attorney voluntarily withdraws from representation or is discharged with or without cause prior to the conclusion of a case. *See Santini v. Cleveland Clinic Fla.*, 65 So. 3d 22, 29–30 (discussing the holdings in *Faro v. Romani*, 641 So. 2d 69 (Fla. 1994); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller,* 629 So.2d 947, 954 (Fla. 4th DCA 1993), and *Rosenberg v. Levin*, 409 So. 2d 1016 (Fla. 1982)).

The problem for Plaintiff is that is not the case before the Court because the contingency occurred prior to Levin Papantonio filing its motion for leave to withdraw on November 7, 2019. ECF No. 13 at 20. Plaintiff does not dispute that he executed a settlement agreement with Defendants in September 2019 that fully resolved his claims in this multidistrict litigation. ECF No. 13 at 37-50. Although counsel would have continued to assist Plaintiff with the remaining ministerial tasks described in the firm's closing letter to Plaintiff, *id.* at 55, Levin Papantonio already

obtained for Plaintiff the bargained-for object of representation—resolution of and compensation for Plaintiff's claims.

Levin Papantonio, therefore, did not withdraw from representation before the contingency occurred, and the cases relied on by Plaintiff are inapt. Instead, well-established Florida law recognizes Levin Papantonio's entitlement to the fruits of its labor regardless of whether counsel's withdrawal was voluntary. *See, e.g.*, *Harrington v. Estate of Batchelor*, 924 So. 2d 861, 862 (Fla. 3d DCA 2006) ("Since there is no dispute that a settlement agreement was executed settling one of the claims described in the fee agreements before the attorneys' representation was terminated, the attorneys are entitled to the agreed upon contingency fees."); *Cooper v. Ford & Sinclair, P.A.*, 888 So. 2d 683, 690 (Fla. 4th DCA 2004) ("The contingency requirement had been met and the attorneys were entitled to rely upon the provisions of the written contingency fee contract to determine the amount of their fee."); *id.* ("[T]he case law demonstrates that if an attorney is discharged after the contingency has already occurred, the attorney can rely on the contingency agreement for his fee."); *King v. Nelson*, 362 So. 2d 727, 728 (Fla. 2d DCA 1978) (rejecting argument to limit compensation to *quantum meruit* where plaintiff agreed to a settlement "and it was subsequent to and not prior to his agreement to the settlement

16

that he advised his first attorneys that he was discharging them"); *see also*

*Eakin v. United Tech. Corp.*, 998 F. Supp. 1422, 1429 (S.D. Fla. 1998) ("If

Acosta obtained the contingency, he will be entitled to his contingency fee

under the contract."); *Town of Medley v. Kimball*, 358 So. 2d 1145, 1147

(Fla. 3d DCA 1978).  At bottom, "[a] client may not accept the benefits of a

valid contingency fee contract and subsequently contest his obligations

thereunder."  *Zaklama*, 906 F.2d at 653.

    In the same vein, Plaintiff invites this Court to evaluate whether Levin

Papantonio was discharged for good cause because counsel was

"dishonest, unethical, misleading," or "negligent." ECF Nos. 8, 11; *see also*

ECF Nos. 14, 19.  The Court, however, declines to delve into this briar

patch because it is beyond the analysis undertaken in those cases where

counsel is discharged after the occurrence of the contingency.  The

Eleventh Circuit has explained that whether a client "has grounds for a

malpractice or negligence case in state court is irrelevant" where the

"contractual examination of the contingency fee agreement … has shown

that [counsel] did all that was required of them in order to recover their

percentage of the judgment proceeds."  *Zaklama*, 906 F.2d at 653; *see also*

*Eakin*, 998 F. Supp. at 1428 n.4 (S.D. Fla. 1998) ("[A]s the Eleventh Circuit

has expressly held, any malpractice claim a client may have against an

17

attorney is not relevant for purposes of determining whether the attorney is entitled to his or her contractual fee.").

In short, Levin Papantonio satisfied the second requirement for a charging lien because it has demonstrated an agreement with Plaintiff as to the payment of attorney's fees and costs. Plaintiff's arguments pertaining to the voluntariness of Levin Papantonio's withdrawal and cause for discharge are irrelevant because counsel filed the motion seeking leave to withdraw *after* Plaintiff settled his Abilify claims.

Turning to the third requirement—*an attempt to avoid the payment of fees or costs or a dispute as to the amount involved*. This case presents both. As demonstrated in this order, Plaintiff has attempted to avoid paying his former counsel the contingency fee and costs described in the Retainer Agreement. Plaintiff also disputes the amount of any award of attorney's fees to Levin Papantonio; that is, he argues the variable contingency fee should not reach 40 percent because the Defendants' Master Answer predated the Complaint. ECF No. 8 at 3.

The Court can swiftly resolve the dispute as to the amount of fees at this juncture. As part of the MDL, the Court ordered that Defendants' Master Answer was deemed adopted "to all properly served Complaints … in any case now in the future pending in MDL No. 2734." Case No. 3:16-

18

md-02734-MCR-GRJ, ECF No. 106 at 6.  This provision—enacted for efficiency and expediency—includes Plaintiff's case, which was part of the multidistrict litigation.  Accordingly, the automatic adoption of the Master Answer in Plaintiff's case triggered the 40 percent contingency fee provided in the Retainer Agreement.

Fourth (and finally)—*timely notice of the lien.*  "[A]n attorney attempting to enforce a charging lien must notify his or her client in some way before the conclusion of the original proceeding that he or she intends to pursue the charging lien."  *Baker & Hostetler, LLP v. Swearingen*, 998 So. 2d 1158, 1161 (Fla. 5th DCA 2008).  Mr. Nees admits that Levin Papantonio sent him a draft of the Notice of Attorney's Lien.  ECF No. 11 at 1.  The fact that the draft was not signed in accordance with Federal Rule of Civil Procedure 11 is immaterial because there is no such requirement in the law governing charging liens.

Moreover, an attorney may give timely notice of a charging lien by pursuing the lien in the original action before the close of the original proceeding.  *Daniel Mones, P.A.*, 486 So. 2d at 561; *see also Heller v. Held*, 817 So. 2d 1023, 1025–26 (Fla. 4th DCA 2002) ("In order to be 'timely,' notice of an attorney's charging lien must be filed before the lawsuit has been reduced to judgment or dismissed pursuant to a settlement.").

Because Levin Papantonio filed and pursued its charging lien before this settled case was dismissed, it gave timely notice to Plaintiff.[5]

In view of the above, the Court concludes that Levin Papantonio has satisfied the four requirements for a valid charging lien against Plaintiff for the attorney's fees and costs detailed in the Retainer Agreement. Therefore, Plaintiff's "Motion to Quash Attorney's Lien," ECF No. 11, is due to be **DENIED**.

### C.   The disbursement of attorney's fees and costs

The Court must now turn to the relief sought by Levin Papantonio— enforcement of the charging lien against the settlement funds held by the Settlement Administrator.  ECF No. 13 at 22.  The Court has the authority to order a distribution of the settlement funds as deemed appropriate. Indeed, Plaintiff filed a motion during the pendency of the instant dispute requesting the Court exercise this authority to authorize the distribution of certain undisputed funds he is owed from the settlement.  ECF No. 15.[6]

---

[5] The same reasoning applies to the question of whether Plaintiff has perfected the charging lien for enforcement, but Plaintiff does not raise that particular issue as a barrier to enforcement.  *See Hall, Lamb & Hall, P.A. v. Sherlon Invest. Corp.*, 7 So. 3d 639, 641 (Fla. 3d DCA 2009) ("To perfect a charging lien, the lienor-attorney need only demonstrate that he or she provided the parties to the litigation with timely notice of the interest." (citing *Sinclair, Louis*, 428 So. 2d at 1384)).

[6] Because the Court resolves Levin Papantonio's charging lien in this order, that motion, ECF No. 15, is due to be **DENIED AS MOOT**.

And, as a matter of Florida law, "[a] summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien." *Daniel Mones, P.A.*, 486 So. 2d at 561.

Levin Papantonio requests disbursement of attorney's fees in the amount of 40 percent of the net settlement amount as the contingency fee, which in this case is $45,175.56.  ECF No. 16 at 3, 5.  A portion of Levin Papantonio's fees, $7,228.09, is allocated as an MDL assessment for the Common Benefit Fund (6.4 percent of the total 9 percent of the net settlement).  Case No. 3:16-md-02734-MCR-GRJ, ECF No. 848 at 6.  For the reasons explained above, Levin Papantonio is entitled to this compensation under the Retainer Agreement.

Levin Papantonio also seeks reimbursement from the settlement funds for costs in the amount of $5,047.23.  ECF No. 16 at 3, 5.  The described costs include the case filing fee, copies of medical records, consulting services, and charges relating to copies, telephone calls, printing, and postage, plus interest, totaling $2,110.82.  Plaintiff agreed to pay these costs plus interest in the Retainer Agreement.  ECF No. 13 at 24–25.  The Court also concludes that 2.6 percent from the total 9 percent MDL assessment for the Common Benefit Fund, totaling $2,936.41, is

properly charged to Plaintiff as a cost, rather than having it further deducted from Plaintiff's attorney's fees.

In sum, Levin Papantonio's motion to enforce the charging lien, ECF No. 13, is **GRANTED** to the extent that the Settlement Administrator, BrownGreer, is authorized to distribute (1) $37,947.47 in attorney's fees and $2,110.82 in costs from Plaintiff's settlement funds to Levin Papantonio, and (2) $10,164.50[7] from Plaintiff's settlement funds to the MDL Common Benefit Fund.[8]

## III.  CONCLUSION

Accordingly, it is **ORDERED**:

1.   Plaintiff's "Motion to Quash Attorney's Lien," ECF No. 11, is **DENIED**.

2.   Plaintiff's "Motion Requesting Judicial Notice and Order Directing Release of Settlement Funds," ECF No. 15, is **DENIED AS MOOT**.

3.   Levin Papantonio's "Motion to Enforce Attorney's Lien," ECF No. 13, is **GRANTED**.  The Settlement Administrator, BrownGreer, is authorized to distribute (1) $37,947.47 in

---

[7] The $10,164.50 represents: (1) payment of attorney's fees in the amount of $7,228.09 (6.4%) to the Common Benefit Fund, which amount is deducted from the attorney's fees payable to Levin Papantonio; and (2) payment of costs in the amount of $2,936.41 (2.6%) to the Common Benefit Fund, which is paid by the Plaintiff.

[8] It is unclear whether Plaintiff continues to dispute the validity of the "Medical Lien Holdback" claimed by the Lien Resolution Administrator, ECF No. 16 at 5, 7, so the Court will not order the distribution of Plaintiff's entire settlement funds at this juncture.  Plaintiff may be able resolve this matter with the Settlement Administrator following entry of this order and without the need for further intervention by the Court.

attorney's fees and $2,110.82 in costs from Plaintiff's settlement funds to Levin Papantonio, and (2) $10,164.50 from Plaintiff's settlement funds to the MDL Common Benefit Fund.

**DONE AND ORDERED** this 21st day of May 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

23